United States District Court
Southern District of Texas
**ENTERED**
October 08, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF MELVIN MARTINEZ GUARDADO | § § § § CASE NO. 3:24-mj-00006-1 |

## **OPINION AND ORDER**

In this extradition proceeding, the United States has requested that Melvin Martinez Guardado ("Guardado") be extradited to Honduras to face charges for homicide. I have scheduled a November 1, 2024 hearing on the extradition request. In the interim, I must determine whether Guardado should be held in custody pending that hearing. The United States, acting at the request of Honduras, asks me to hold Guardado without bail pending a final determination on whether extradition is appropriate. *See* Dkt. 6. On the flip side, Guardado argues that he is not a flight risk nor a danger to the community, and requests that I grant his release under whatever conditions I deem appropriate. *See* Dkt. 13.

## **LEGAL FRAMEWORK**

To begin, I note that the federal extradition statute provides no explicit authority for a district court to grant bail to a potential extraditee. *See* 18 U.S.C. § 3184. The extradition treaty between the United States and Honduras contemplates that "a fugitive criminal" could "be actually under prosecution out on bail," but is otherwise silent as to whether bail should be granted. Convention Between the United States & Honduras for the Extradition of Fugitives from Justice art. VI, Jul. 10, 1912, 37 Stat 1616. Finally, although the Bail Reform Act, 18 U.S.C. § 3142, governs the standards for pretrial release or detention when a person has been charged with a federal crime, it is inapplicable in extradition matters. *See Matter of Extradition of Russell*, 647 F. Supp. 1044, 1048 (S.D. Tex. 1986) (collecting cases regarding the inapplicability of the Bail Reform Act to extradition proceedings), *aff'd*, 805 F.2d 1215 (5th Cir. 1986).

To fill this gap, federal courts turn to federal common law. In 1903, the United States Supreme Court recognized a district court's power to grant bail in international extradition cases. *See Wright v. Henkel*, 190 U.S. 40, 63 (1903). The high court stated that "while bail should not ordinarily be granted in cases of foreign extradition," it was unwilling to hold that the courts "may not in any case, and whatever the special circumstances, extend that relief." *Id*. "As interpreted by the lower courts, this language established the 'special circumstances' test, which has become the standard for rendering bail decisions in international extradition cases." *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 470 (S.D. Tex. 2010). In short, the rule is this: "Bail should be denied in extradition proceedings absent 'special circumstances.'" *Russell*, 805 F.2d at 1216.

This, of course, begs the question: what "special circumstances" justify the release of an individual pending a final determination on an extradition request? The answer is clear as mud.

> A review of the relevant case law most certainly demonstrates that what constitutes special circumstances is anything but clear. "Special circumstances" have never been specifically defined, but have only been described in the abstract, leaving trial courts with little to no guidance. . . . Thus, bail decisions are contradictory and irreconcilable. *See, e.g.*, Nathaniel A. Persily, *International Extradition and the Right to Bail*, 34 Stan. J. Int'l L. 407, 426 (Summer 1998) ("The case law regarding the criteria for pretrial release in extradition cases has been, to [say] the least, inconsistent."); Christopher S. Kelly, *Bail in International Extraditions: How the "Special Circumstances" Standard has Become "Especially Confusing,"* 21 DCBA Brief 34, 36 (March 2009) ("[T]he cases are replete with contradictory and irreconcilable decisions, which only serve to further confuse the courts and muddy the law."); Joshua J. Fougere, *Let's Try This Again: Reassessing the Right to Bail in Cases of International Extradition*, 42 Colum. J.L. & Soc. Probs. 177, 188 (Winter 2008) ("[T]here is not one consistent legitimate special circumstance that warrants release on bail.").

*Garcia*, 761 F. Supp. 2d at 471; *see also In re Extradition of Shaw*, No. 14-MC-81475, 2015 WL 521183, at *5 (S.D. Fla. Feb. 6, 2015) ("[W]hat exactly constitutes 'special circumstances' has yet to be defined. Courts have only described this

concept in the abstract, leaving trial courts without specific factors or parameters to follow.").

After reviewing the caselaw addressing the "special circumstances" test, I find myself confused, befuddled, and perplexed. I do not know how to define "special circumstances," other than to say that they are rare. The best explanation I have found was formulated by Judge Learned Hand more than 100 years ago. He noted that a district court's limited power to grant bail in cases involving foreign extradition "should be exercised only in the *most pressing circumstances*, and when the requirements of justice are absolutely peremptory." *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (emphasis added). "Thus, an extradition respondent's burden is heavy [when it comes to establishing 'special circumstances'], almost to the point of being unrealistic." *United States v. Ramnath*, 533 F. Supp. 2d 662, 666 (E.D. Tex. 2008).

The "'special circumstances' determination is a discretionary decision for the trial judge, and the list of potential special circumstances is not limited to those previously recognized in published decisions." *In re Adame*, Misc. No. H-13-287, 2013 WL 1222115, at *2 (S.D. Tex. Mar. 25, 2013) (quotation omitted); *see also Garcia*, 761 F. Supp. 2d at 472 ("Put simply, the determination of whether a potential international extraditee has satisfied their burden to warrant bail is necessarily made on a case-by-case basis.").

In addition to establishing special circumstances, an individual seeking bail in an extradition case must show that he "is neither a flight risk nor a danger to the community." *Matter of Extradition of Rangel*, No. 24-cv-80208, 2024 WL 2220444, at *12 (S.D. Fla. May 7, 2024).[1] Special circumstances and no flight

---

[1] Although "[t]here is general agreement that the potential extraditee bears the burden of establishing a bond is warranted[,] . . . there is disagreement among the federal district courts regarding the burden of persuasion that a potential extraditee must satisfy, which adds to the uncertainty of making a bond determination." *Garcia*, 761 F. Supp. 2d at 474. "[M]ost courts have determined that a defendant must meet his or her burden by clear and convincing evidence. . . . However, some other courts have held that a preponderance of the evidence standard applies." *Rangel*, 2024 WL 2220444, at *12 (collecting cases).

3

risk/danger are both prerequisites to establishing entitlement to bail in an extradition case and "a court logically can address either prong first." *Ramnath*, 533 F. Supp. 2d at 665 n.3.

Unique to extradition proceedings is a presumption against bail and in favor of detention. *See Russell*, 805 F.2d at 1216 ("Unlike the situation for domestic crimes, there is no presumption favoring bail. The reverse is rather the case." (quotation omitted)). The rationale for this presumption has been perfectly explained by one of my colleagues here in the Southern District of Texas:

> The government's strong interest in denying bail stems from its need to ensure that the United States fulfills its international treaty obligations. . . . This is because extradition treaties create a binding obligation on the United States government to surrender fugitives to its treaty partners once they are found to be extraditable. . . . If a foreign fugitive was released by the United States and absconded pending extradition, the government would suffer serious embarrassment, and this could create potential reciprocal noncompliance by other countries. . . . The paramount importance of an extradition treaty supports denials of bail in foreign extradition cases. . . . *The special circumstances test was established to allow for a limited number of cases to be eligible for bail because any risk of flight is too significant a risk for the national interest to tolerate.*

*Garcia*, 761 F. Supp. 2d at 470–71 (emphasis added) (quotation omitted). With this legal landscape in mind, I shall determine whether bail is appropriate in this case.

## ANALYSIS

I will assume, for the sake of argument, that Guardado can satisfy his burden to demonstrate that he is neither a risk of flight nor a danger to the community. Even so, I must be convinced that there are special circumstances that warrant Guardado's release pending the final extradition hearing in this matter.

Guardado argues that that there are two special circumstances that justify granting bail. First, Guardado contends that "there is a routine practice of torture, cruel, inhuman or degrading treatment or punishment of jail detainees in Honduras." Dkt. 13 at 7. Even if I take this allegation as true, I cannot fathom how that constitutes a special circumstance weighing in favor of release *in the United*

4

*States*. At this juncture, I am simply deciding whether Guardado should be detained pending the November 1, 2024 extradition hearing. If I order Guardado detained, he will be remanded to the custody of the United States Marshals and held at one of two detention facilities in the greater Houston area. Under no circumstances will Guardado be forced to return to Honduras prior to the November 1, 2024 extradition hearing. The conditions of confinement in Honduran prisons are irrelevant to a detention decision in this matter.

Second, Guardado insists that "release is necessary to allow him to continue his employment, to fund his defense to his extradition." Dkt. 13 at 5; *see also id*. at 8 ("Guardado needs financial assistance to fund his extradition and [Convention Against Torture] defense. . . . Guardado's family is not economically well-off, which requires that he resume his employment so that he may assist in covering his legal expenses."). This argument fails for a host of reasons. To start, "special circumstances" must be extraordinary and not factors applicable to all defendants facing extradition. *See Russell*, 805 F.2d at 1217. As the Fifth Circuit has explained, "financial and emotional hardship [is] present in almost all cases and therefore d[o] not constitute a 'special circumstance.'" *Id*.

On a more fundamental level, there is no need for Guardado to attempt to raise money to fund his defense. After reviewing the financial affidavit Guardado submitted at his initial appearance in this matter, I found that he does not have the means to pay for a lawyer. As a result, I appointed the federal public defender's office to represent Guardado in this case at no expense to Guardado. I am confident that the federal public defender's office will do a stellar job of representing Guardado's interests. Although I am sympathetic to Guardado's desire to return to work so he can hire new or additional counsel, this simply does not constitute a "special circumstance."

In sum, Guardado has not established the existence of any special circumstances warranting his entitlement to bail in this case. I thus order that Guardado be held in custody pending the November 1, 2024 extradition hearing.[2]

SIGNED this 7th day of October 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[2] Guardado also argues that the United States has failed to establish "that the extradition treaty between the United States and Honduras is in full force." Dkt. 13 at 8. This is important, Guardado argues, because the existence of an extradition treaty between the United States and Honduras is a prerequisite to extradition. I do not disagree with this basic premise, but I note that the United States has proffered the declaration of Noah L. Browne, an Attorney Adviser in the Office of the Legal Adviser for the Department of State. *See* Dkt. 1 at 20. In his declaration, Browne acknowledges that "on August 28, 2024, the Republic of Honduras provided notice to the United States of America through diplomatic note of its decision to terminate the Extradition Treaty." *Id.* "Accordingly, absent a further notice by the Republic of Honduras . . . the Extradition Treaty . . . will terminate on March 1, 2025." *Id.* at 20–21. For now, however, Browne declares that the "relevant and applicable treaty provisions" in the extradition treaty between the United States and Honduras, which is attached to the Complaint, are "in full force and effect." *Id.* at 20. Browne acknowledges that "[t]he United States generally cannot extradite in the absence of a treaty" and "[i]f the Extradition Treaty terminates prior to the United States surrendering . . . Guardado to [Honduras], the United States will not extradite . . . Guardado to Honduras." *Id.* at 21. This testimony, especially in the absence of any counterevidence, easily satisfies any burden the United States has to demonstrate "reasonable grounds" to believe that there is an active extradition treaty in place between the two countries. *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).