United States District Court
Southern District of Texas
**ENTERED**
November 19, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF MELVIN MARTINEZ GUARDADO § § § § § | CASE NO. 3:24-mj-00006-1 |

## OPINION AND ORDER

By Complaint filed on September 24, 2024, the United States seeks a certification that Melvin Martinez Guardado is extraditable to the Republic of Honduras. *See* Dkt. 1. Guardado opposes the United States' request. *See* Dkt. 21. For the reasons discussed below, I certify that Guardado is extraditable to Honduras.

### BACKGROUND AND PROCEDURAL POSTURE

Guardado is a 53-year-old Honduran citizen who has been charged in a Honduran court for homicide in violation of Article 192 of the Honduran Criminal Code. A Honduran judicial officer has issued a warrant for Guardado's arrest on this charge.

This criminal matter originated on December 19, 2020, when Honduran officials recovered the body of Manuel de Jesús Bonilla Guevara, who died from gunshot wounds to his abdomen and back. Honduran officials summarize the events leading to Guevara's death as follows:

> [O]n Saturday December 19th, 2020, around 7:00 p.m., the deceased **MANUEL DE JESÚS BONILLA GUEVARA** arrived along with other persons accompanying him at a liquor store located in Morejen Village, Municipality of Tela, Department of Atlántida in that place was Mr. **MELVIN MARTÍNEZ GUARDADO** alias "**El Pelón**" along with other persons. Minutes [after] the arrival of the deceased **MANUEL DE JESÚS BONILLA GUEVARA** to the place, the accused took out his gun and fired shots in the air; observing this action, the deceased **MANUEL DE JESÚS BONILLA GUEVARA** took out his gun and fired shots in the air too, then the accused **MELVIN MARTÍNEZ GUARDADO** alias "**El Pelón**" pointed his gun straight ahead at Mr. **MANUEL DE JESÚS BONILLA**

>  **GUEVARA** and started shooting at him several times, causing his death and then fled the scene on his vehicle.

Dkt. 1 at 50. Three individuals who were at the liquor store on the night of December 19, 2020, have identified Guardado as the shooter. The first individual, Franklin Edgardo Corrales Cruz, the victim's brother-in-law, stated that he entered the liquor store and saw Guardado shoot the victim. The second individual, whose identity has been protected, told authorities that he saw Guardado fire several shots at the victim, causing his death. The third individual, Ruth Abigail Sarmiento Pérez, was in the front of the liquor store on the night in question when she heard several shots and then saw Guardado exit the store, get in his vehicle, and leave the scene. All three individuals picked Guardado out of a photographic array.

On November 1, 2024, I held an extradition hearing at which Guardado appeared with counsel. I heard extensive oral argument exploring the factual and legal issues involved in this extradition proceeding. At the end of the hearing, I gave the parties an opportunity to submit post-hearing briefs. Only the United States has done so. *See* Dkt. 24. The evidentiary record consists of the documentation attached to the Complaint, as well as those papers attached to Guardado's opposition brief and the United States' post-hearing submission.

## THE EXTRADITION PROCESS

Extradition is the "surrender by one nation to another of an individual accused or convicted of an offense outside of its own territory, and within the territorial jurisdiction of the other" for prosecution or punishment. *Terlinden v. Ames*, 184 U.S. 270, 289 (1902). An extradition proceeding is unique in that it is neither criminal nor civil in nature. Rather, the process of extraditing an individual from the United States to Honduras is governed by the federal extradition statute, *see* 18 U.S.C. §§ 3181–3196, and the governing treaty between the two countries.

The Fifth Circuit has "outlin[ed] the process of international extradition":

> The substantive right of a foreign country to request the return of a fugitive and the duty of the United States to deliver the fugitive depends entirely on the existence of a treaty between the requesting

> nation and the United States. To invoke its right to extradite a fugitive, the requesting nation must submit its request to a state or federal court. [In practice, the requesting nation submits its request to the Secretary of State who may request the Justice Department to file a verified extradition complaint.] The court determines whether the fugitive is subject to extradition and, if so, must order the fugitive's commitment and certify the supporting record to the Secretary of State. The decision to surrender the fugitive then rests in the discretion of the Secretary of State.

*In re United States*, 713 F.2d 105, 107–08, 108 n.1 (5th Cir. 1983) (cleaned up).

Because "[t]he ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct foreign affairs," the court's involvement in the extradition process is limited. *Escobedo v. United States*, 623 F.2d 1098, 1105 (5th Cir. 1980). A district court must issue a certificate of extradition if the following five requirements are met: (1) the judicial officer has jurisdiction to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive named in the extradition request; (3) the applicable extradition treaty is in full force and effect; (4) the extradition treaty covers the offense for which extradition is requested; and (5) there is sufficient evidence to support a finding of probable cause as to the offense for which extradition is sought. *See* 18 U.S.C. § 3184; *In re Extradition of Garcia*, 825 F. Supp. 2d 810, 826–27 (S.D. Tex. 2011).

## GUARDADO IS EXTRADITABLE TO HONDURAS

Guardado concedes that I am authorized to conduct this extradition proceeding, this court has jurisdiction over him, the offense of homicide is an extraditable offense under the extradition treaty between the United States and Honduras, and there is sufficient evidence to support a finding of probable cause that he committed a homicide. Guardado's sole ground for challenging this extradition proceeding is his contention that the United States has failed to establish that an extradition treaty is still in effect between the United States and Honduras.

3

It is undisputed that the United States and Honduras entered into an extradition treaty more than a century ago. *See* Convention Between the United States and Honduras for the Extradition of Fugitives from Justice, Hond.-U.S., Jan. 15, 1909, 37 Stat. 1616, *as amended by* Supplementary Extradition Convention Between the United States of America and the Republic of Honduras, Feb. 21, 1927, 45 Stat. 2489 (the "Extradition Treaty"). The ultimate issue here is whether the Extradition Treaty is in full force and effect today.

In support of its request for a certificate of extradition, the United States has submitted a September 18, 2024 declaration from Noah L. Browne, an Attorney Adviser in the Office of the Legal Adviser for the Department of State. Browne declares that "[t]he Extradition Treaty is currently in full force and effect between the United States and Honduras." Dkt. 1 at 20. Noting that the State Department's conclusion that the Treaty is currently in effect is entitled to great deference, the United States argues that Browne's statements are sufficient to establish that a valid treaty exists between the United States and Honduras. *See Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) ("While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight.").

Guardado disagrees. Guardado points to an August 28, 2024 letter in which Honduras informed the United States Embassy of its decision, "pursuant to Article XIV of the [Extradition Treaty], . . . to terminate the Extradition Treaty." Dkt. 21 at 28. According to Guardado, this letter represents an "unqualifed [sic] termination of the [E]xtradition [Treaty]." *Id.* at 10–11. The problem with Guardado's argument is that it conveniently ignores Article XIV of the Extradition Treaty, which provides that "either Contracting Party may at any time terminate the [Extradition Treaty] on giving to the other six months' notice of its intention to do so." Dkt. 1 at 14. Given this language, the United States insists that the Extradition Treaty, by its own terms, will terminate on March 1, 2025—six months after Honduras informed the United States of its intent to terminate the Extradition Treaty. I agree. "The

4

interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellín v. Texas*, 552 U.S. 491, 506 (2008). The treaty's language is clear and unambiguous: neither country may terminate the Extradition Treaty immediately; a country seeking termination must provide the other side with six months' notice. Accordingly, the Extradition Treaty is in full force and effect today and will remain so until at least March 1, 2025.[1]

It is telling that the August 28, 2024 letter in which Honduras announced its decision to end the Extradition Treaty specifically referenced Article XIV. Such language is clear recognition by Honduras that it must provide advance notice to the United States to terminate the Extradition Treaty.

In his opposition brief and at oral argument, Guardado argued that no evidence suggests that Honduras shares the United States's view that the Extradition Treaty remains in effect until March 1, 2025. That is simply not true. Top Honduran officials—the president of the Honduran Supreme Court and the Honduran Foreign Minister—have publicly acknowledged that the Extradition Treaty remains in force through the end of February 2025. *See* Dkt. 24-1 at 2 (Honduran Supreme Court president Rebeca Ráquel Obando recognizing "that the extradition agreement with the United States will remain in effect until February 28, 2025"); Dkt. 24-2 at 1 (Honduran Foreign Minister Enrique Reina conceding that the Extradition Treaty will not expire until February 28, 2025).[2] Perhaps the best evidence that Honduras views the Extradition Treaty as continuing in full force through February 2025 is the fact that Honduras has extradited numerous

---

[1] Honduras could withdraw its August 28, 2024 notice of termination, in which case the Extradition Treaty would remain in full force and effect beyond March 1, 2025.

[2] These proclamations from Honduran officials come from a newspaper article and a social media account. Although this evidence is unquestionably hearsay, such statements are admissible at extradition hearings and may support the court's findings leading to a certificate of extradition. *See Collins v. Loisel*, 259 U.S. 309, 317 (1922) (hearsay evidence may form the basis for extradition); *Balzan v. United States*, 702 F.3d 220, 224 (5th Cir. 2012) ("The evidentiary rules governing ordinary civil and criminal trials do not control what may be admitted in an extradition hearing."); *Escobedo*, 623 F.2d at 1102 n.10 ("Hearsay . . . is permitted in extradition proceedings.").

individuals to the United States pursuant to the Extradition Treaty in the months following Honduras's August 28, 2024 notice of intent to terminate. *See* Dkts. 24-3, 24-4 (describing extraditions by Honduras of individuals to the United States on September 4, 2024, and October 23, 2024).

The United States has easily satisfied its burden to demonstrate that the Extradition Treaty is presently in full force and effect. I thus find that all five requirements for a certification of extradition have been met.

## CONCLUSION

I certify the extradition of Melvin Martinez Guardado to the Republic of Honduras on the charge of homicide. The United States Attorney's Office is ordered to forward a copy of this Opinion and Order, together with a copy of all testimony taken before me, to the Secretary of State. Finally, I commit Melvin Martinez Guardado to the custody of the United States Marshals pending a decision on extradition by the Secretary of State pursuant to 18 U.S.C. § 3186.

SIGNED this 19th day of November 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE